So we're now going to hear United States v. Harding Mr. Robbins, good morning. You could have slept in this morning, Mr. Robbins. I took both my associates with me, and they both complained about it. We could have had the notice for oral argument, and where oral argument is scheduled. It's my fault. I didn't do it. It was quite embarrassing when we walked up to the clerk in Atlanta. And you were told that oral argument for the first time was now going to be in your hometown. Yes. I've never had it here. All right. Well, Mr. Robbins, why don't you come and talk with us? And again, thank you for accommodating the error that we made today in four hours. It's the first time we've had oral argument in this court in Birmingham in many, many, many years, certainly more than 20 years since we've had a full calendar of oral argument. So you get a break from us this morning. Thank you, Your Honor. John Robbins, on behalf of Mr. James Harding, a 70-year-old man who was convicted in the Southern District of Alabama on a . . . Let's cut to the chase here. Chase. It seems to me this was not intrinsic. Okay? I have no . . . I can only speak for myself. Okay? This is what I'm grappling with in this case. But I don't know what the district court was doing saying that it was intrinsic. It just doesn't make any sense to me. It seems like it's clear 404B evidence that would have been admissible for another purpose. But our precedents appear to say that you have to give the limiting instruction. And you repeatedly asked for it. And the district court repeatedly refused to give it. Okay? So now we're really left with . . . So it seems to me admitting it as intrinsic is erroneous. Not giving the limiting instruction you requested. And you mentioned it enough, it seems to me, in your brief to where you've pointed out. You have to give the limiting instruction. One wasn't given here. Correct. And we also submitted a proposed limiting instruction. Yeah, it was the pattern, right? Right. Right. So it seems to me then the thing we've got to grapple with this morning is, well, was the error harmless? Yeah. Okay? And that's the question is, was there harmless error in this case, in the trial court treating it as race gesti as part of the conspiracy and not treating it as traditional 404B? Yeah, the jury has not been told that it can only be considered for a limited purpose. So the jury's free to consider it for improper purposes. That's a problem. And you basically got Snowden testifying, who's a convicted drug dealer, cooperating with the government. And he's really the only guy who can point to your guy, right? The only witness. And we got this really powerful evidence about the drugs and the firearms that are found at your client's home, right? That is correct. And the government thinks that their case was strong. Now, the jury, in my opinion, did not have problems with Snowden. I think they had problems with Snowden. They did convict because they had— A lot of drugs and firearms were found at your client's house. The prosecution ended, and I can't blame them for ending on the note of bringing in two bricks of heroin and several firearms. It looks bad. It's hard to get over that. What do our cases say, though, about how we're to evaluate this kind of error in terms of harmlessness? Well, the Dickerson case, which the government relies on a lot, which is similar, is they're talking about, well, is this prejudicial? Is the evidence—if we take away the evidence that was admitted in error, was there other evidence sufficient to support a jury verdict? And it really comes down to Snowden then, doesn't it? And the jury was given—they were given a special verdict. If you find them guilty of the conspiracy, then you have to determine how much the weight of the drugs you're going to attribute to them. And they had greater than 1,000 grams, greater than 100 grams, less than 100 grams. And the jury found in their verdict form that it was 100—it was more than 100 grams, but you can obviously take—they didn't find them guilty of 1,000 grams or more, which we have two bricks of heroin that was basically roughly 1,800 grams if you put them together, plus the crack cocaine and the powder cocaine. And so— But the conspiracy, whatever the propriety of the admission of the heroin and firearms found in the home, the conspiracy had an ending date, which was close to two years before— That is correct. The search warrant at the home, right? It was pled at on or about April the 23rd of 2019. The search warrant was September 15th of 2021, so roughly 30 months later. So you could imagine a world in which the jury didn't find him guilty of more of the amount because the cutoff for the conspiracy was 2019. And that's certainly an argument that you can interpret the jury verdict as we're not going to put any value in the evidence that came out of the search warrant in Birmingham. Yeah, but if that's the case, though, then it seems like the jury did what it was allowed to do under 404B, which is just to say, look, we're considering this search in Birmingham and what they found there is just evidence of lack of mistake and things of that nature, that this really was old school, and we're not including that as an intrinsic part of the conspiracy. Why isn't that the right read of that? But you could make that—you certainly could make that interpretation. Let's assume that—I mean, why isn't that the right interpretation of what the jury did here? But it is—one, we can't get into speculating what the jurors are thinking about, but clearly— We have to. Doesn't the case law say we have to ask whether the erroneously admitted evidence had a likely substantial influence on the jury's verdict? You do, and I think because of that jury verdict and because the case rose and fell on the testimony of Snowden, it was him. He's the only one who identifies your client as old school. That is correct. Right, as old school. That is correct. And he's a cooperating witness. He's trying to get a good deal from the government. You've got reasons to think he's highly questionable, but then you couple it with a lot of drugs and firearms found in Birmingham. And I just think if it just was Snowden, I think the jury probably wouldn't have convicted him. But now you have—well, you've got Snowden, and you have this other—which was really 404B evidence with no instruction on how to consider that. This is what I'm trying to figure out. I mean, you need the instruction to make sure the jury doesn't consider it for intrinsic evidence of guilt, right? That's why you give the instruction. Yes. But it seems like here the jury didn't consider it for intrinsic evidence of guilt because of the verdict form. And on the flip side, it seems like what the government was doing through this search, the reason why they were trying to get it in, is to say we really have old school. That was his house. We arrested him at this house, and he had drugs at his house. This really is old school. And that is a 404B purpose, right, that they could get it in for. So I'm trying to figure out what's the problem. Well, it is that the jury was not told. They let—the trial court allowed it to be just part of the conspiracy when the indictment alleged on or about April the 23rd. And then there's really no further evidence that the conspiracy continued beyond basically the 23rd—basically on April the 30th when almost everyone was arrested. And so— Well, that's why I don't think it's intrinsic is because there's nothing to link what is found in Birmingham two years later with a conspiracy in Mobile that, according to the indictment, ended in 2019. But let's talk about what Judge Brasher is saying. Judge Brasher, I'm not entirely sure I understand it, but his point is that the verdict form shows somehow that the jury did not consider the drugs and firearms found in Birmingham two years later for an improper purpose. Can we tell that from this verdict? I don't think we can tell that from this purpose because we can also argue they had questions about Snowden's credibility. So now let's—this guy is really a bad guy because he's got all these drugs and he's got these guns. And they might have considered it for both. Yeah. Right? Correct. One of which is improper. So, I mean, obviously you can make the argument that Judge Brasher is making, but you can also make the argument that this is a bad guy. Let's convict him and we're going to show that, hey, we're not so comfortable with Snowden, but this is a bad guy. We're going to convict him. Okay, Mr. Robbins. Thank you. Let's hear from Mr. Gray. You've saved five minutes for rebuttal, Mr. Robbins. Thank you, Chief Judge Pryor, and may it please the Court. I'll jump straight to the evidentiary question that the Court has been asking about, and I'll actually start with Judge Brasher's point about the verdict form. The United States, for the conspiracy charge, sought to hold Harding accountable for one kilogram of heroin. The jury did not find Harding responsible for one kilogram. It actually found him responsible for 100 grams of heroin. How much was found in Birmingham? I believe it was approximately two kilograms, Your Honor, and that argument actually doesn't originate with Judge Brasher. That was a point that Harding emphasized in his reply brief. It's Eleventh Circuit, Document 34, page 12 if you're looking at the file stamp, and I believe it's page 8 if you're looking at the bottom. There was a discussion at sentencing about what quantity Harding should be held accountable for, and Harding's response to that was, I should only be held accountable, really, for I believe it was the roughly 200 grams that officers found during a traffic stop in South Alabama because that's actually what the jury found. And so Harding drew an inference from the verdict, which is good for him arguably at sentencing as a relevant conduct matter, but it severely undercuts his argument. Doesn't it also, though, mean, though, that they weren't necessarily very impressed with Snowden? I don't think that's true, Your Honor. I think that the jury necessarily – Because Snowden testifies about a lot more amounts, doesn't he? He – so I think he testifies to regular shipments. Honestly, the United States – Right, right. That's a lot more than just what was found in that one stop, right? Right, but I also – Which is why you charged him with more, right? Yes. Okay. And my recollection is that how it was ultimately argued was that you could get there in a number of different ways in the quantity, but I believe the jury did find Snowden credible about what the essential question was in the case, which is was there an agreement formed with this individual, Harding, who was known as old school? Might have helped that they found him more credible because of all the drugs and firearms that are found in Birmingham two years later. Your Honor, that's correct, but I also think that speaks to why the evidence ultimately was admissible. And I will – Make your argument for why – you're going to try to tell me that it was intrinsic? I think I have an uphill battle when it comes to intrinsic evidence. I mean it seemed like the assistant U.S. attorney who tried the case thought that that was an uphill battle but kept basically acquiescing in it because the district court seemed enamored with the idea. But in the event that it's not – okay, you say uphill battle. All right, I agree with you. Easy, easy to say it's 404B evidence. But our precedents say if it's admitted for that purpose, you must give the limiting instruction, and the defendant asked for one repeatedly and the district court refused to give it. Your Honor, if it's 404B evidence, there should have been a limiting instruction. That argument is a different argument from the admissibility of the evidence. As Chief Judge Pryor, I believe you acknowledged. Well, actually I think our precedents seem to say that it's admissible if the limiting instruction is given. Respectfully, I'd suggest this court's assessment of admissibility is a bit more nuanced than that in that the court at times considers the presence of a limiting instruction. But I would point the court to the Horner decision, which the United States cited in its brief, and there the court toggles between Rule 404B and intrinsic evidence without, as I could tell, considering the limiting instruction at all. It absolutely is the case that in some of this court's other precedents, it has spoken to whether there is a limiting instruction, but that fact – Well, let me read you United States v. Tokars from 1996. When the district court admits the 404B evidence, it, quote, must provide a limiting instruction. We've said that, haven't we? It must do so. That's how you ensure that it's being admitted for this limited purpose. I think that's correct, but I still think that claim of error is a claim of instructional error, and it is not a claim that the evidence itself is inadmissible. This evidence is textbook Rule 404B evidence, and the question here is ultimately what to do with the absence of the limiting instruction. Question number one is whether that argument is preserved in the first place, and I respectfully would push back on the argument that this was adequately preserved in the briefing at the appellate stage. I think it certainly was preserved before the district court, but— Before the district court denied his request for a limiting instruction and said that could have reduced the risk of prejudice. That's the opening paragraph of his brief. It doesn't take much to preserve it. Why isn't that enough? I think still he has to walk through the argument of instructional error and show how that instructional error affected the verdict, and there wasn't that development of that claim here. Well, I mean, as I understand his argument, what he's arguing is because of that failure, it creates an admissibility problem. It can be admitted only for a limited purpose, and in the absence of the limiting instruction, the jury's not told of that limited purpose. That creates an admissibility problem. In other words, they come as a package. Admissibility is tethered to the instruction. You don't get one without the other. I read his brief slightly differently, which is that he's trying to keep the evidence out wholesale, and the evidence shouldn't be out. The evidence was properly admissible. The question is— It makes no sense to say that a limiting—I asked for a limiting instruction and to say that that means it shouldn't have come in at all. The whole point of his complaint about a limiting—the limiting instruction he requested not being given is that it would be admitted. I think that question goes to the district court argument, and I agree. He absolutely is free to make those two arguments. I read his appellate argument. I'm telling you what his opening paragraph of his brief brings up, though, the limiting instruction and how it wasn't given. Well, I'm not—I'm ultimately not going to die on the Hill of whether it ultimately is abandoned or not in this court. I'll talk about the effect of the limiting instruction. What a Rule 404B limiting instruction is designed to do is ultimately to protect and guard against the use of evidence as—to prove propensity, to say this person acted on this occasion because he acted on this occasion in the past. Or as substantive evidence of guilt. I think that is—so I think that's a different problem, and I actually agree with Judge Jordan. I think that's the potential risk here is that this was never argued as propensity evidence. The risk is to whether there was jury confusion about the conspiracy charge. What did the prosecutor do at closing with regards to the heroin and firearms found at the residence later? The prosecutor at closing makes some remarks that I read to be consistent with some of the things the district judge had said earlier, which is that essentially the jury could treat this later evidence as sort of part of the conspiracy itself. That's a problem. That doesn't answer the question of harmful versus harmless error, but it's at least a relevant data point. I mean you're trying to tie what everyone seems to agree would have been admissible as 404B evidence as part of the evidence supporting the conspiracy conviction as a substantive matter, and that's impossible because the conspiracy, according to the indictment, had a cutoff date sometime in 2019. Your Honor, I will recognize that is a potential problem. I would make a couple of responses to that problem. The first response I would make is sort of a structure of how we think about the decision in that point. The confusion with that issue, Judge Jordan, that you're raising goes to the conspiracy charge but should support the vacatur only of the conspiracy conviction. That doesn't affect the distribution conviction. That doesn't call into question any of that evidence or the jury's verdict on that charge. That's point number one. Point number two is that as to the conspiracy charge itself, we go back ultimately to the verdict form, number one, and see that the jury ultimately did not draw that conclusion. Whatever conclusion the jury drew, it seems abundantly clear that the jury did not simply glom that additional amount found later in 2021 on to the earlier conspiracy. Because of the verdict form, we know for a fact that the jury didn't count that drugs, the drugs that were found in the search as part of the conspiracy, right? That's correct, Your Honor. But we don't know from that that the jury didn't convict this client based on the supposition that the drugs found in Birmingham showed that he's a drug dealer. I think that was – That's what got them over the edge to believe a convicted drug dealer who's cooperating with the government wants a better sentence. If they had any doubt about Snowden, well, we know he's a drug dealer. I respectfully disagree, Your Honor, because I think that would be using the evidence as propensity evidence, and that's not what I – Well, they weren't told not to. It's correct that the jury wasn't told not to, but what – Well, how then do we know from the verdict form that they didn't? I don't see how it doesn't do that. I mean they were told what the charge was, right? They were given proper instructions that we assume they followed about what the conspiracy was in Alabama and all of that. I think the court still looks at what he was ultimately found guilty of. Now, I will note in the court's final instructions, the court directed the jury that it was to find him guilty as charged in the indictment. That's in document 340. I believe the pertinent instructions are on pages 81 to 84. And so it was abundantly clear to this jury that Harding only was on trial for what was charged in the indictment. And while I recognize – Okay, okay. And what leads them maybe to believe that he's guilty of what's charged in the indictment is he continues to be a drug dealer in Birmingham. But I think the way that evidence ultimately was used in the trial was for the 404B purposes, intent, knowledge, identity. Except the district court didn't tell the jury that. The district court didn't tell the jury that, but as this court recognized during the previous discussion, this court ultimately looks on the back end about what suppositions it can draw from the verdict. Yeah, and I know. I look, for example, at the Horner case where there were eight witnesses. And we said it was too much. It was harmful, right? Here we've got one. We've got one witness who's a convicted drug dealer trying to get a good deal. He's the only one who can really point the finger at old school, right? And that's it. There are – there is an ultimate fact that only Snowden was able to testify to. He was the person in the vehicle with old school, and he provided that testimony. Yeah, there's other witnesses who talk about old school. There are wiretaps that talk about old school. But the only one who can say who old school is is Snowden, right? I think what Chief Judge Pryor is trying to get at is that the evidence found in the home two plus years afterwards is not just evidence that goes to intent and some of the other things that 404B can go to, but also undergirds and supports the credibility and believability of Snowden. Yes. And so they look at that, and they're like, of course he's telling the truth, because they just found two kilograms of cocaine – of heroin at his house. In progress. Had that evidence not been – had that evidence not been there, right, it might have been a closer call for the jury as to whether or not to believe Snowden about who old school was. Your Honor, I think bottom line, yes, I agree that the evidence corroborated portions of Snowden's testimony. I respectfully disagree that it was impermissible corroboration, because part of the argument that the United States made with respect to its intrinsic argument is that part of this completed the story of the crime. For example, Snowden – How does this connect in any way to a conspiracy in the Southern District of Alabama that ended two years earlier where nothing that's found in the home in Birmingham two years later is in any way connected to Snowden or anyone in Mobile? Snowden ultimately testified that he entered into business with Harding because Harding was a large-scale supplier. No, but nothing that's in that home in Birmingham is in any way, from my reading of this record, tied to Mobile, is it? Is there anything that you introduced – that the government introduced at this trial that ties it to the South Alabama conspiracy, other than the fact he's a big-time drug dealer? No, there's nothing to show that this peril was destined for Mobile. Let me ask you this in this way. Chief Judge Pryor is saying that his concern here, I think, is that the jury could have believed Snowden that he had the right person as old school because of this drug that was found in this person's house in Birmingham. That's his concern. Isn't that a proper use of 404B evidence? Because one of the uses of 404B evidence is absence of mistake and identity. Wouldn't that be a proper use of that evidence? Chief Judge Pryor, I note that my time has expired. Yeah. I think the answer is that, yes, to a point, it can be used to establish the absence of mistake. It can show to establish the dependent. Yeah, but the mistake is not Snowden's mistake. The mistake in the rule is Harding's mistake, right? I do agree with – I agree with that, Your Honor. It's not that Snowden was – but it's that – being mistaken that what he's engaged in is illegal activity. I think it's that Harding didn't happen into the heroin by accident. Like that he didn't simply – he wasn't merely present with heroin. That's the 404B purpose. Unless there are further questions, I would respectfully ask the court to affirm. Thank you, Your Honor. Thank you. Mr. Robbins. Your Honor, when we started addressing the evidence of the search warrant, the government kind of played it thinking it was 404B but then got on the judge's bandwagon when the judge was convinced that it's part of the race gesti. So throughout the trial, they played it that it was race gesti, and they really didn't argue identity. They were really arguing more on intent. So how is that? Where would I find that? Is that an enclosing argument? I think it's more enclosing arguments, Your Honor. Let me ask you this. Sure. So you conceded that – I think you conceded that this would come in under 404B if there would have been a limiting instruction, right? We attempted to exclude it completely. Our fallback plan was we needed a limiting instruction. I mean, his question is a really good one, right? It comes in as 404B with a limiting instruction. With a limiting instruction, yes. Doesn't it? So the next question I ask, I mean, I'm just curious about this. I mean, what would – what is it – what is the jury supposed to do with the evidence if it comes in? What is your position on what the jury – like what would that instruction tell the jury, you can consider this evidence for X? The evidence comes in for the – not on the substantive issue of guilt. It comes in for a very limited purpose, and purpose is – that was argued – would have been argued and is argued peripherally on the issue of intent. So if you find from the other evidence that the defendant is guilty of the conspiracy or guilty of participating in the conspiracy, you can use this evidence that he did so intentionally. The substantive count from involving Mr. Clark being stopped and finding the 205 grams is that also is based upon Snowden's testimony. I mean, Clark didn't testify on that. They tied that count to Harding through Snowden's testimony. Why, there wasn't testimony – I haven't looked at the record in this case. There wasn't testimony from the police officer who made the stop? And he didn't identify your client? He – the police officers – that stop happened on the same day but two different times. They stopped, they let him go, they stopped him again, found the heroin. Okay. But there's no – I mean Clark didn't testify. There's no connection to that 205 grams of heroin from that stop to Harding without Snowden's testimony. Okay. It just seemed to me that if this comes in as harmless error, then I don't know what the case is going to be that the limiting instruction is. Well, if it comes in – If it comes down to one witness who's a convicted drug dealer who's trying to get a good deal and he's the only one who really corroborates, who fingers your client. Right. If it comes in without a limiting instruction, then the limiting instructions have no meaning. Yeah, that's my concern about this case. Well, Mr. Robbins, I hope it was worth it for you and your associates. Well, they got a free cup of coffee, I guess. Thank you.